3:22-cv-03153-SEM-KLM # 1-3 Page 1 of 13

E-FILED
Friday, 19 August, 2022 10:10:08 AM
Clerk, U.S. District Court, ILCD

EFILED
7/11/2022 12:33 PM
Paul Palazzolo
7th Judicial Circuit
Sangamon County, IL

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

| | | |
|---|---|---|
| LUANNE MCMANUS, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case # 2022LA000121 |
| NOBEL BIOCARE USA, LLC; NOBEL BIOCARE HOLDING AG, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, LUANNE MCMANUS ("LuAnne"), by and through her undersigned attorneys, Lowenstein & Smith P.C., and for her Complaint against Defendants, NOBEL BIOCARE USA, LLC, and NOBEL BIOCARE HOLDING AG, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, LuAnne McManus, is and at all times relevant to this action, an individual who resides in Sangamon County, Illinois.

2. Nobel Biocare USA, LLC, is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Yorba Linda, California.

3. Upon information and belief, Nobel Biocare USA, LLC, markets and sells NobelDirect tooth implants to dentists in Illinois and concealed the fact that the NobelDirect implants were defectively made in California by agents and employees of Nobel Biocare USA, LLC, and Nobel Biocare Holding AG. At all times relevant herein, Nobel Biocare USA, LLC, and/or Nobel Biocare Holding AG was a "manufacturer" and/or "product seller" of the defective Nobel Biocare conical connection regular platform implant ("Nobel Biocare dental implant")

Page 1 of 12

which subsequently fractured and caused personal injury to Plaintiff, as those terms are defined in Illinois law. 735 ILCS 5/2-2101.

4. Nobel Biocare USA, LLC's registered agent for service of process is CT Corporation System, 208 South Lasalle Street, Suite 814, Chicago, IL 60604.

5. Nobel Biocare Holding AG is a limited liability company incorporated under the laws of Switzerland with its principal place of business in Zurich, Switzerland.

6. Defendants are collectively referred to herein as "Nobel Biocare."

7. Jurisdiction and venue in this Court are proper based on the type of relief sought and the residence of the parties.

## GENERAL ALLEGATIONS

8. LuAnne McManus is a 61 year old female who was referred to an oral and maxillofacial surgeon for placement of dental implant at tooth area #30.

9. On information and belief, Defendants are involved in the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, distribution, marketing, sale, labeling, and/or supplying of the defective Nobel Biocare dental implant at issue herein. Defendants claim that their implants are a more conservative treatment option than other traditional methods because these implants do not require grinding the healthy teeth next to a missing tooth. According to Defendants, their implants preserve the adjacent teeth, are quick and easy to install, are indistinguishable from real teeth, are stable and secure so that the patient can eat all foods, are completely metal free, and prevent the jawbone shrinking process that often occurs when a person loses their tooth. Defendants claim that Nobel Biocare dental implants are the long lasting solution, often for life.

10. LuAnne was seen by her dentist on December 12, 2016, for the removal of tooth #30 and was determined to be a suitable candidate for the proposed implant procedure in about 4 months.

11. On or about June 26, 2017, a Nobel Biocare Parallel Conical connection regular platform implant which was manufactured, designed, distributed and/or sold by Defendants was placed in the tooth #30 area without difficulty. The proper Nobel Biocare implant drilling sequence instructions were followed by the surgeon and the implant was left to integrate into the jawbone for three months.

12. Three months later, the Nobel Biocare Parallel Conical connection regular platform was successfully integrated into LuAnne's bone, and a crown was installed in the area of tooth #30 in May 2018.

13. On July 15, 2020, an x-ray image of the tooth area #30 was taken. For the first time the x-ray demonstrated a vertical fractured crack in the Nobel Biocare dental implant.

14. On October 5, 2020, the Nobel Biocare dental implant was surgically removed.

15. As a result of the need to remove the Nobel Biocare dental implant, LuAnne experienced repeated infections in the lower right area, resulting in the need to exfoliate a piece of necrotic bone which occurred due to the damage from the removal of the Nobel Biocare implant.

16. On March 9, 2021, LuAnne reported to her surgeon to have a cone beam CT scan for possible replacement implant in the #30 tooth area.

17. Unfortunately, the bone loss was so significant that a second dental implant could not, and cannot, be placed due to the removal of the Nobel Biocare implant.

18. LuAnne suffers disfiguring, permanent bone loss and loss of function of tooth #30 as a result of the failure of the Nobel Biocare dental implant to function properly.

19. LuAnne has in the past, and will in the future, continue to suffer pain and discomfort from these injuries, which interferes with her ability to chew and swallow.

20. The injury and the pain and suffering associated with LuAnne's resulting condition were proximately caused by the defect and failure of the Defendants' Nobel Biocare dental implant.

## COUNT I
## STRICT LIABILITY – NOBEL BIOCARE USA, LLC AND NOBEL BIOCARE HOLDING AG

21. Plaintiff, LUANNE MCMANUS, re-alleges and re-affirms the allegations contained in paragraphs 1 through 20 above as though fully set forth herein and further alleges:

22. Defendants are involved in the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, distribution, marketing, sale, labeling, and/or supplying of the defective Nobel Biocare dental implant at issue herein.

23. The implant in question was manufactured and supplied by Defendants in a defective condition which rendered it unreasonably dangerous. The implant was unsafe for reasonably foreseeable uses, and was dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable user, assuming the ordinary knowledge of similar users as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular user.

24. The defective condition of the implant was the proximate cause of injuries to LuAnne described herein.

25. Had the Defendants exercised reasonable care in the design, selection, assembly, inspection, testing, and delivery of the implant in question, or had they used a feasible alternative

design in manufacturing this implant which do not place LuAnne at such a foreseeable, unreasonable risk of harm, LuAnne would not have sustained the injuries described herein.

26. Defendants are liable for the pain, suffering, and mental anguish suffered by LuAnne in the past and to be suffered in the future in an amount to be determined by the jury.

27. Defendants are also liable for all dental expenses incurred in the past and to be incurred in the future as a result of the injuries sustained in this incident.

28. Plaintiff is also entitled to recover from Defendants compensation for the permanent limitation upon Plaintiff as a result of these injuries, scarring and disfigurement, as well as all other out-of-pocket costs and expenses associated with the above-described injuries in an amount in excess of $50,000.

WHEREFORE, Plaintiff, LUANNE MCMANUS, prays for judgment in her favor and against Defendants in excess of $50,000, for costs of suit, and for such other and further relief as this court deems just.

## COUNT II
## BREACH OF EXPRESS AND IMPLIED WARRANTIES –
## NOBEL BIOCARE USA, LLC, AND NOBEL BIOCARE HOLDING AG

29. Plaintiff, LUANNE MCMANUS, re-alleges and re-affirms the allegations contained in paragraphs 1 through 20 above as though fully set forth herein and further alleges:

30. Defendants expressly warranted that Nobel Biocare dental implants meet all industry standards and will last a lifetime under normal use and absent trauma. See **Exhibit 1** attached hereto.

31. Plaintiff at all times used her Noble Biocare dental implant under normal use and the crack in the Nobel Biocare dental implant was not a result of trauma.

32. Defendants market and sell its implants, including the implant involved in this incident in question, with an implied warranty of merchantability and fitness for a particular purpose.

33. The implant in question failed to meet the standards of merchantability and fitness for a particular purpose in that it placed LuAnne in a foreseeable, unreasonable risk of harm as designed, manufactured, and supplied. Moreover, the Nobel Biocare implant failed to meet the standards of merchantability and fitness for its particular purpose given the fact that it also failed to include sufficient warning of the known risks associated with its use. Each of these failures was a proximate cause of the injuries sustained by LuAnne as described herein.

34. The Nobel Biocare dental implant was manufactured and marketed by Defendants in a defective condition unreasonably dangerous, and using a design that places end-users such as LuAnne at a foreseeable, unreasonable risk of harm, and that contained insufficient warning and instruction regarding this harm.

35. The Defendants' actions were a proximate cause of the injuries to LuAnne as described herein.

36. Defendants are liable for the pain, suffering, and mental anguish suffered by LuAnne in the past and to be suffered in the future in an amount to be determined by the jury.

37. Defendants are also liable for all dental expenses incurred in the past and to be incurred in the future as a result of the injuries sustained in this incident.

38. Plaintiff is also entitled to recover from Defendants compensation for the permanent limitation upon Plaintiff as a result of these injuries, scarring and disfigurement, as well as all other out-of-pocket costs and expenses associated with the above-described injuries in an amount in excess of $50,000.

39. As a result of Defendants' breach of the express warranty, implied warranty of merchantability, and the implied warranty of fitness for a particular purpose given by the Defendants, Plaintiff has suffered damages and is entitled to recover.

WHEREFORE, Plaintiff, LUANNE MCMANUS, prays for judgment in her favor and against Defendants in excess of $50,000, for costs of suit, and for such other and further relief as this court deems just.

## COUNT III
## NEGLIGENCE – NOBEL BIOCARE USA, LLC, AND NOBEL BIOCARE HOLDING AG

40. Plaintiff, LUANNE MCMANUS, re-alleges and re-affirms the allegations contained in paragraphs 1 through 20 above as though fully set forth herein and further alleges:

41. Defendants were responsible for manufacturing the implant in question and had the duty to use ordinary care in the design, selection of the materials, assembly, inspection, testing, and delivery of the implant in question which caused injury to LuAnne. Defendants breached these duties and in fact produced and delivered a defective Nobel Biocare dental implant which caused the injuries to LuAnne when it failed under normal use.

42. Defendants failed to exercise their duty of care which resulted in an unreasonable risk of harm while the implant was being used for its intended purpose and being used for a particular purpose which should have reasonably been anticipated by the manufacturer.

43. Had the Defendants exercised reasonable care in the design, selection, assembly, inspection, testing, and delivery of the implant in question, or had they used a feasible alternative design in manufacturing this implant which do not place LuAnne at such a foreseeable, unreasonable risk of harm, LuAnne would not have sustained the injuries described herein.

44. Plaintiff was unaware of and had no ability to know of or discover the defective condition of the Nobel Biocare dental implant until July 15, 2020, when, for the first time, an x-ray of the area of tooth #30 revealed that the Nobel Biocare implant had cracked inside of LuAnne's bone.

45. Defendants are liable for the pain, suffering, and mental anguish suffered by LuAnne in the past and to be suffered in the future in an amount to be determined by the jury.

46. Defendants are also liable for all dental expenses incurred in the past and to be incurred in the future as a result of the injuries sustained in this incident.

47. Plaintiff is also entitled to recover from Defendants compensation for the permanent limitation upon Plaintiff as a result of these injuries, scarring and disfigurement, as well as all other out-of-pocket costs and expenses associated with the above-described injuries in an amount in excess of $50,000.

48. As a proximate result of Defendant's negligence, Plaintiff has suffered damages in excess of $50,000.

WHEREFORE, Plaintiff, LUANNE MCMANUS, prays for judgment in her favor and against Defendants in excess of $50,000, for costs of suit, and for such other and further relief as this court deems just.

## COUNT IV
## RES IPSA LOQUITUR

49. Plaintiff, LUANNE MCMANUS, re-alleges and re-affirms the allegations contained in paragraphs 1 through 20 above as though fully set forth herein and further alleges:

50. Defendants were responsible for manufacturing the implant in question and had the duty to use ordinary care in the design, selection of the materials, assembly, inspection, testing, and delivery of the implant in question which caused injury to LuAnne. Defendants breached these

duties and in fact produced and delivered a defective Nobel Biocare dental implant which caused the injuries to LuAnne when it failed under normal use.

51. During the course of the treatment described above, LuAnne was required to undergo a surgical procedure which she understood to be properly termed an "Implant Reconstruction." During that surgery, a certain prosthetic device, which Plaintiff understands to be properly termed as Nobel Biocare regular platform, conical connection implant, was placed in Plaintiff's jawbone at tooth #30.

52. The Nobel Biocare dental implant was designed, manufactured, supplied, and sold by Defendants named in this action.

53. The prosthetic device was defective, and its implantation in Plaintiff's body has caused Plaintiff sever injuries, which will be described below. Defendants were negligent in the design, manufacture, storage, transportation, and sale of the implant device, in the manner set out below, and their negligence was a direct and proximate cause of the injuries and damages for which LuAnne now sues.

54. The design of the prosthetic device, the selection of the materials from which it was fabricated, the manufacturing procedures by which it was made, and the inspection procedures attendant on the manufacturer, as well as the packaging of the device and the distribution and storing of the device, were all functions within the exclusive control of Defendants.

55. The fracture of the Nobel Biocare dental implant in the jawbone is an event that does not normally occur without negligence in the design, manufacture, fabrication, transportation, or storage of the device. The Plaintiff therefore invokes the doctrine of res ipsa loquitur.

56. Each of the foregoing acts and omissions were negligent and were the proximate cause of the injuries and damages suffered by Plaintiff.

57. The Nobel Biocare dental implant fractured, causing permanent bone loss, among other injuries to Plaintiff.

58. Defendants are liable for the pain, suffering, and mental anguish suffered by LuAnne in the past and to be suffered in the future in an amount to be determined by the jury.

59. Defendants are also liable for all dental expenses incurred in the past and to be incurred in the future as a result of the injuries sustained in this incident.

60. Plaintiff is also entitled to recover from Defendants compensation for the permanent limitation upon Plaintiff as a result of these injuries, scarring and disfigurement, as well as all other out-of-pocket costs and expenses associated with the above-described injuries in an amount in excess of $50,000.

61. Other than the conditions for which Plaintiff submitted for treatment, Plaintiff was in excellent health. Plaintiff has been caused to suffer injuries requiring Plaintiff to undergo additional surgical procedures. Plaintiff's condition has become aggravated and worsened, emotionally upsetting, and embarrassing to Plaintiff, all because of the negligence of Defendants.

WHEREFORE, Plaintiff, LUANNE MCMANUS, prays for judgment in her favor and against Defendants in excess of $50,000, for costs of suit, and for such other and further relief as this court deems just.

## COUNT V
## FAILURE TO WARN

62. Plaintiff, LUANNE MCMANUS, re-alleges and re-affirms the allegations contained in paragraphs 1 through 20 above as though fully set forth herein and further alleges:

63. As the manufacturer of the implant in question, Defendants had a duty to give a reasonable and adequate warning of dangers inherent or reasonably foreseeable in the use of their

product and reasonable instructions regarding the avoidance of such inherent or foreseeable dangers.

64. Defendants knew of the potential for harm associated with the surgical implant procedure, and that the potential for significant harm was foreseeable.

65. Despite this knowledge, Defendants failed to provide any warning or instruction with the implant which would have advised LuAnne of the potential for harm should she choose to have the implant installed.

66. By failing to warn Luanne of this known danger, Defendants breached their duty to warn LuAnne so as to protect her from foreseeable harm.

67. Because the Defendants failed to include adequate warning, the presumption arises under Illinois law that the user would have read and heeded an adequate warning.

68. As a proximate result of the Defendants' negligence, Plaintiff has suffered harm as more fully set forth below.

69. Plaintiff hereby demands a trial by jury.

WHEREFORE, Plaintiff, LUANNE MCMANUS, prays for judgment in her favor and against Defendants in excess of $50,000, for costs of suit, and for such other and further relief as this court deems just.

Dated: July 11, 2022

Respectfully submitted,

LUANNE MCMANUS, Plaintiff

BY: LOEWENSTEIN & SMITH, P.C.

By: /s/ Gary L. Smith
Gary L. Smith
LOEWENSTEIN & SMITH, P.C.
1204 South Fourth Street
Springfield, IL 62703
(217) 789-0500
lexsmith@lhoslaw.com
#2644029

# EXHIBIT 1

3:22-cv-03153-SEM-KLM # 1-31 Page 13 of 18



# Warranty Program

Nobel Biocare provides warranties for certain Nobel Biocare products. The terms and conditions of these warranties are set out in this Nobel Biocare Warranty Program (the "Warranty Program"):

## 1. Warranties for Treatment Provider[1]

### 1.1 Lifetime warranty for implants

Nobel Biocare guarantees to replace any Nobel Biocare implant that fails to remain in the bone in which it is implanted. Nobel Biocare will replace free of charge the implant and Nobel Biocare restorative components placed on the implant at the time of failure with the same Nobel Biocare implant and restorative components as installed on the implant at the time of failure (the only possible changes are related to diameter and/or length).

### 1.2 Lifetime warranty for restorative components

Nobel Biocare guarantees to replace free of charge any non-temporary and non-provisional Nobel Biocare restorative component that fails with the same restorative component. In addition to the replacement of the failed Nobel Biocare restorative component, Nobel Biocare will also replace free of charge any other non-temporary and non-provisional Nobel Biocare restorative component or the Nobel Biocare implant on which the failed Nobel Biocare restorative component is placed with a Nobel Biocare restorative component or Nobel Biocare implant, if said restorative component or implant needs to be replaced in course of the replacement of the failed Nobel Biocare restorative component.

### 1.3 10-year warranty for Nobel Biocare abutments on Non-Nobel Biocare Implants[2]

If a Nobel Biocare non-temporary, non-provisional abutment is placed on Non-Nobel Biocare Implants, the warranty as set out in clause 1.2 above is limited to a period of ten (10) years from the date the abutment was placed on the Non-Nobel Biocare Implant.

### 1.4 Warranty for NobelProcera and Procera Products[3]

Notwithstanding the warranties set out in clauses 1.2 and 1.3, for NobelProcera Products and Procera Products Nobel Biocare guarantees to replace free of charge any non-temporary, non-provisional NobelProcera Product or Procera Product that fails within five (5) years after being placed in the patient's mouth. In addition to the replacement of the failed NobelProcera Product or Procera Product, Nobel Biocare will also replace free of charge any other non-temporary and non-provisional Nobel Biocare restorative component or the Nobel Biocare implant on which the failed NobelProcera Product or Procera Product is placed with a Nobel Biocare restorative component or Nobel Biocare implant, if said restorative component or implant needs to be replaced in course of the replacement of the failed NobelProcera Product or Procera Product. Attachments (primary and secondary parts) and riders for NobelProcera Implant Bars Overdenture are excluded from this warranty.

### 1.5 Replacement of Non-Nobel Biocare Implants



a. A Non-Nobel Biocare Implant was inserted, for which the safety and efficacy is supported by at least 2-year clinical data for this specific implant based on reported data of a minimum of 10 patients published in a peer-review journal[4]; and

b. A NobelProcera Product or Procera Product was placed on top of the Non-Nobel Biocare Implant on or after March 1, 2010; and

c. The warranty for the Non-Nobel Biocare Implant (as given by the manufacturer of the Non-Nobel Biocare Implant) is void or invalid solely because a NobelProcera Product or Procera Product was used on the Non-Nobel Biocare Implant; and

d. The Treatment Provider provides Nobel Biocare with a copy of the warranty rejection by the manufacturer of the Non-Nobel Biocare Implant; and

e. The Treatment Provider provides a case documentation to Nobel Biocare (including planning x-ray, post operative x-rays, follow-up x-ray, a photograph of the Non-Nobel Biocare Implant on the day of extraction, the extracted Non-Nobel Biocare Implant and the NobelProcera Product or Procera Product).

## 2. Special Warranty to patient for NobelProcera Implant Bar Overdenture

For NobelProcera Implant Bar Overdenture (Patient Guarantee Card), Nobel Biocare guarantees to the patient to replace free of charge any NobelProcera Implant Bar Overdenture that fails within five (5) years after being placed in the patient's mouth. Attachments (primary and secondary parts) and riders for NobelProcera Implant Bars Overdenture are excluded from this warranty.

## 3. Scope of warranties

Any warranty given under this Warranty Program is limited to the replacement of the failed product and of such additional components (implants, restorative components) as set out in clauses 1.1 through 2, respectively (including the costs for shipment of the replacement product(s) to the Treatment Provider). In particular, Nobel Biocare does not compensate the Treatment Provider or the patient for any additional components, tools, treatment costs, or other costs and expenses arising out of or in connection with the replacement of the failed product. In case one of the products that is to be replaced under the warranties set out herein is no longer commercially available, an alternative solution may be chosen.

## 4. Eligibility

### 4.1

To receive the benefits of the warranties set out in clauses 1 and 2, the Treatment Provider must:

Have solely used original Nobel Biocare surgical and prosthetic components in the patient case in which the Nobel Biocare product failure occurred, including implants, cover screws, healing abutments, permanent abutments, prosthetic screws, prosthetic cylinders, crowns, bridges and bars.

Have performed the treatment in accordance with Nobel Biocare's prescribed procedures and instructions as published at the time of the treatment and in accordance with accepted dental practice. In particular did not use any contraindicated implant and restorative techniques.

Ensure that the patient complies with generally accepted standards of good oral hygiene. For implants, oral hygiene maintenance examinations twice a year are recommended.



For NobelProcera Products and Procera Products in particular: Have complied with the handling and material instructions of Nobel Biocare as published at the time of preparation, design and finishing.

Any non-compliance with points (a) through (e), respectively, above will make the warranties set out in this Warranty Program null and void.

## 4.2

Nobel Biocare is not obliged to furnish any benefits under this Warranty Program with respect to any Nobel Biocare product, if the failure of the product was caused by trauma or by the patient.

## 4.3

This Warranty Program does not apply to any products that are specially manufactured or modified at the request of the Treatment Provider as well as temporary implant systems.

# 5. Claims

## 5.1

To raise a claim under this Warranty Program, you have to send a signed, stamped and completed Questionnaire for Complaint, Implant Failure (Guarantee) and Implant Fracture accompanied by the failed product and the other components placed by the Treatment Provider to Nobel Biocare within three months after the product failure occurred. In case of an implant failure, an x-ray of the failed implant is mandatory. Prior to submitting the implant and the other components used in the treatment, ensure that all products are sterilized.

## 5.2

For NobelProcera Products and Procera Products, complaint orders must be sent using the NobelProcera Software with the original file name(s) and the appropriate complaint code(s). For NobelProcera Implant Bridges, the complaint questionnaire must be filled out.

# 7. Limitations on Warranty Program

EXCEPT FOR THE WARRANTIES DESCRIBED IN CLAUSES 1 AND 2 ABOVE, NEITHER NOBEL BIOCARE NOR ANY AFFILIATED COMPANY WHICH MANUFACTURES OR DISTRIBUTES ANY NOBEL BIOCARE COMPONENTS MAKES ANY WARRANTY WITH RESPECT TO NOBEL BIOCARE COMPONENTS, EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED GUARANTEES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

In addition, Nobel Biocare and its affiliates disclaim all liability to a Treatment Provider for lost earnings, income or profits, failure of a Treatment Provider to conform to generally accepted standards of dental practices and all other direct or indirect, incidental or consequential damages resulting or arising from the design, composition, condition, use or performance of Nobel Biocare components.

# 8. Application of warranty

The warranties given under this Warranty Program are exclusively for the benefit of eligible Treatment Providers and are not for any other person or entity, including any patient, except for the warranty given directly to the patient in clause 2 above.



## 9.1

Except as set forth in this Warranty Program, neither Nobel Biocare nor any affiliate of Nobel Biocare makes any representation, warranty, covenant or other undertaking relating to Nobel Biocare products. This Warranty Program sets forth the entire understanding and supersedes all prior agreements and discussions relating to the subject matter contained herein.

## 9.2

This Warranty Program applies to all Nobel Biocare companies.

## 9.3

For markets served by distributors, other conditions may apply. Please contact your Nobel Biocare representative for information.

# 6. Modification or termination of Warranty Program

Nobel Biocare may modify or terminate this Warranty Program at any time in whole or in part. Changes to or the termination of the Warranty Program will not affect the warranties given under this Warranty Program for products installed prior to the date of the change or termination.

**REFERENCES**

1. For the purpose of this Warranty Program, "Treatment Provider" means dentists, physicians and dental technicians.

2. For the purpose of this Warranty Program, "Non-Nobel Biocare Implant" means any implant not manufactured by Nobel Biocare.

3. For the purpose of this Warranty Program, "NobelProcera Product" means NobelProcera Crown and Bridge, NobelProcera Individualized CAD/CAM Abutments, NobelProcera Implant Bridge, and NobelProcera Implant Bar Overdenture, and "Procera Product" means Procera Crown, Procera Abutments, and Procera Implant Bridges.

4. For the purpose of this Warranty Program, "Peer Reviewed Journal" means journals that only publish manuscripts which have passed a so-called peer review (a (normally blinded) process in which the scientific manuscript is critically assessed by other researchers who are experts in the same field).

Nobel Biocare is a leading innovator of implant-based dental restorations. We work every day to perfect every aspect of esthetic dentistry for our customers, and their patients, around the world.

Learn more about who we are and where we've been.

EFILED
7/11/2022 12:33 PM
Paul Palazzolo
7th Judicial Circuit
Sangamon County, IL

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

| | | |
|---|---|---|
| LUANNE MCMANUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case # 2022LA000121 |
| vs. | ) | |
| | ) | |
| NOBEL BIOCARE USA, LLC; NOBEL BIOCARE HOLDING AG, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT

NOW COMES Gary L. Smith, attorney for the Plaintiff, LuAnne McManus, and pursuant to Supreme Court Rule 222, state as follows:

1. That he is the attorney for the Plaintiff in the above-entitled matter.

2. That the total of the money damages sought in the above-entitled matter exceeds fifty thousand dollars ($50,000.00).

_____
Gary L. Smith

Subscribed and sworn to before me, a notary public, this 11th day of July, 2022.

OFFICIAL SEAL
LORI A. SUPRENANT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES MAY. 26, 2023

_____
Notary Public